**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 95-5717

JOHN FRANK MYERS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 95-5809

ANDREW YOUNG FULLER,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of North Carolina, at Bryson City.
Lacy H. Thornburg, District Judge.
(CR-94-86)

Argued: January 31, 1997

Decided: April 11, 1997

Before MURNAGHAN, NIEMEYER and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Sean Patrick Devereux, PITTS, HAY, HUGEN-
SCHMIDT & DEVEREUX, P.A., Asheville, North Carolina, for

Appellants. Deborah Ann Ausburn, Assistant United States Attorney, Asheville, North Carolina, for Appellee. **ON BRIEF:** Mark T. Calloway, United States Attorney, William Boyum, Assistant United States Attorney, Asheville, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Andrew Fuller and John Myers were indicted and convicted of possession of marijuana with intent to distribute and of manufacturing and cultivating marijuana plants, in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Fuller to six months imprisonment and Myers to three months. On appeal, both defendants challenge the district court's refusal to grant their motion to suppress evidence seized from Myers' Ford Ranger pickup truck, and Fuller challenges the district court's time restriction placed on cross-examination during his trial. Finding no reversible error, we affirm.

I

North Carolina Wildlife Resource Commission enforcement officers stopped Fuller and Myers while the two were in Myers' pickup truck, suspecting that the two had tended a marijuana patch in the Nantahala National Forest. Following the passage of 20 minutes and a consensual search, Fuller and Myers were arrested for possession of marijuana. They now contend that the stop violated their Fourth Amendment rights because the officers converted a concededly legal Terry stop into an illegal arrest without probable cause.

The district court, reviewing the transcript of a hearing before a magistrate judge and his recommendation, as well as conducting its own hearing, concluded that the stop was "within the parameters of

2

Terry, and that the search that followed was the product of a valid consent by the defendants." The court accordingly denied the defendants' motion to suppress.

The findings of the material facts are not challenged. North Carolina Wildlife Commission officer T. J. England observed a black Ford Ranger pickup truck parked near a trail in a remote area of the Nantahala National Forest. The bed of the truck was empty except for a black plastic truck box. The officer observed tracks, including one made by bicycle tires, leading away from the vehicle onto a logging road. Using tracking practices, in which the officer had many years' experience, the officer was led to a patch of marijuana growing in the forest approximately one mile from the truck. The plants, the bases of which were surrounded by non-native soil, had been recently watered and fertilized. Because this area was remote and Officer England had not seen any other persons in the area, he connected the patch and its recent tending with occupants of the truck. Accordingly, he returned to the pickup truck and called for assistance. Two other North Carolina Wildlife Commission officers responded, as well as one federal officer, and all were advised of Officer England's suspicion. The four officers split into pairs, each pair covering an exit route from the truck's location.

A short time later the pickup truck approached the location monitored by Wildlife Commission officers Burge and Bell, and they stopped it. Defendant Myers was driving and defendant Fuller was the passenger. Officer Burge notified Officer England of the stop by radio, and, as the officers testified, Officer England arrived about five minutes later. By contrast, the defendants testified that about 20 minutes passed before England arrived.

Before Officer England arrived, Officer Burge approached the driver's side of the truck while Officer Bell approached the passenger's side. Both officers had unsnapped the protective snaps from the holsters of their sidearms and had their hands on their weapons, but they did not draw them. While the details of the encounter are disputed beyond this point, the magistrate judge found that Burge asked the two occupants of the truck what they had been doing and checked the driver's license of the driver, Myers. Officer Burge informed the

3

defendants that another officer would like to speak with them and that he would be arriving shortly.

Officer Burge advised Myers that he was looking for weapons and asked Myers whether he would consent to a search of the cab for that purpose. Myers consented and exited the truck, leaving his keys in the ignition. Seeing the keys in the ignition within reach of Fuller, Officer Burge asked Myers if Burge could hold the keys, to which Myers also consented. Myers assisted the officer in moving the truck's seat to conduct the search. The officers found no weapons. They then continued to detain the defendants, awaiting Officer England's arrival.

When Officer England arrived, he asked whether a weapons check had been made and asked both Myers and Fuller to exit the truck. Officer England then noticed in the bed of the truck a mountain bike and a green army duffle bag. He asked Myers for consent to search the duffle bag, as well as the plastic truck box located in the bed of the truck. Myers agreed and pointed out the key on the key chain held by Officer Burge that would unlock the box. In searching the duffle bag, the officers found plastic chemical jugs, a measuring cup, and Miracle Grow plant food. Inside the locked box they found two mature, unwilted marijuana plants. Inside the cab of the truck, they also found a small quantity of marijuana under the driver's side floor mat and a marijuana cigarette in the sun visor. The officers then placed Myers and Fuller under arrest and transported them to the Macon County, North Carolina, jail, where the two later made incriminating statements.

Myers and Fuller do not challenge the officers' stop, agreeing that the officers had a reasonable suspicion that they were the persons tending the marijuana plants. The defendants contend, however, that the legitimate Terry stop was converted to a full-blown arrest because, after searching the truck for weapons, the officers retained Myers' driver's license, retained his keys, and required them to remain until Officer England arrived, a period, they allege, of 20 minutes.

We agree that Officer England had a reasonable suspicion that the persons connected with the black Ford Ranger pickup truck were tending marijuana plants in the marijuana patch found in the Nanta-

4

hala National Forest. Officer England had directly connected the truck with the recently tended marijuana patch by tracking and excluded others by his awareness that no one else was then in the area. When the pickup truck was later stopped, it had a bicycle in the bed of the truck.

Since Officers Burge and Bell had stopped the truck to assist Officer England and did not have his knowledge of underlying facts giving rise to a reasonable suspicion, they secured their safety by inspecting for weapons and instructed the defendants to wait several minutes until Officer England arrived. Whether it took Officer England 5 minutes or 20 to arrive is constitutionally insignificant. The time was not long and was reasonably necessary to permit Officer England to arrive and allay his suspicions. After Officer England arrived, he asked for permission to search the duffle bag and the black plastic box in the back of the truck, and the defendants consented. This search yielded the incriminating evidence found. At that point the officers had probable cause to arrest the defendants.

We believe that this sequence of events never violated the restrictions of Terry v. Ohio, 392 U.S. 1 (1968). Officers may, during a stop, search to protect themselves from weapons, id . at 27, and may detain the persons a reasonable period of time to allay their suspicions for the stop. Id. at 22. In this case, both the search for weapons and the search of the containers were consensual, and a detention for even 20 minutes is well within the time period previously approved as reasonable. See United States v. Sharpe, 470 U.S. 675 (1985) (20-minute detention upon reasonable suspicion to allow primary investigator to arrive permissible under Fourth Amendment); United States v. McFarley, 991 F.2d 1188 (4th Cir. 1993) (38-minute detention upon reasonable suspicion to await arrival of trained dog to sniff luggage permissible under Fourth Amendment).

II

Fuller contends that, while trying this case pro se, the district court improperly limited his cross-examination to 30 minutes per witness, in violation of the Confrontation Clause of the Sixth Amendment. The district court limited Fuller's time for cross-examination after Fuller had been examining the first government witness, Officer England,

5

for over an hour and a half. The court gave Fuller an additional half hour, bringing his total time to just over two hours, in comparison to the direct examination lasting about ten minutes. The district court concluded that Fuller's cross-examination was excessive, redundant, and largely irrelevant. Accordingly, it imposed the 30-minute time limitation on cross-examination of subsequent witnesses.

While such a limitation might, in some circumstances, be unduly restrictive, Fuller does not explain what cross-examination or impeaching testimony was prevented. His most serious arguments relate to his cross-examination of Myers, his co-defendant, who testified against him. But Fuller's cross-examination of Myers fully developed how Myers entered into a plea agreement in order to help himself in light of a prior marijuana-growing conviction; how Fuller had attempted to discourage Myers; but also how Fuller had accompanied Myers on a dozen trips to tend the plants and had carried the harvested plants seized at the time of the arrest. If the district court committed any error, it was harmless.

AFFIRMED

6